1  TEDDY RICHARDS II
2  PO Box 1655
3  Christiansted, VI 00821
   teslawhistler@outlook.com
4  (224)-604-0474
5  Pro Se Plaintiff

FILED
JUL 16 2025
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| TEDDY RICHARDS II, | Case Number: CV 25-6013 JCS |
|---|---|
| Plaintiff, | |
| v. | **COMPLAINT** |
| TESLA INC., DBA TESLA MOTORS INC., | **DEMAND FOR JURY TRIAL** |
| Defendant. | |

**PARTIES**

1. Plaintiff TEDDY RICHARDS ("Plaintiff")("Employee"), is a protected individual and resident of the state of California, formerly in contract with the Defendant.

2. Defendant TESLA INC., ("Defendant")("Employer"), is a Delaware Corporation conducting business as a manufacturer in Fremont, California at 45500 Fremond Boulevard, Fremont, CA. Tesla is a multinational technology, energy, and automotive company. It designs, manufactures, and sells battery electric-vehicles, battery-energy storage devices, solar panels, and relevant components, while providing a variety of relevant services.

## JURISDICTION

3. The United States District Court - Northern District Of California has subject-matter jurisdiction under 28 U.S.C § 1331 as this action is about the Constitution Of The United States and federal statues, including Title VII Of The Civil-Rights Act Of 1964. The Court has authorization to award the relief under Title 28 U.S.C §§ 2201 and 2202; 42 U.S.C § 1988; through the equitable powers of the District Court.

## VENUE

4. Venue is proper as all events occured in this District, all relevant property is located in this District, and the Plaintiff and Defendent are located in this District.

## INTRADISTRICT ASSIGNMENT

5. The Division of San Francisco / Oakland is proper under Civil Local Rules 3-2(c) and 3-2(d) because a substantial part of the events or omissions of claims occurred in Alameda County.

## VERIFIED STATEMENT OF FACTS

6. By administrative practice, Tesla is an agent of serial violations to basic law/regulation.

7. By record, Tesla is an agent of serial violations to basic law/regulation.

### Plaintiff's Initial Health/Safety Reports

8. Plaintiff (Employee) was hired by the Employer (Tesla Inc.), as a Production Associate, on or about March 29, 2023. The Employee and Employer operated within employment contracts where specific actions occurred. Two critical health/safety reports were formally sent to the Employer's internal safety department (Tesla-EHS). Each formed report included verbiage such as "respiratory aluminum dust hazards in working areas / direct inhalation of aluminum dust" or "proximity aluminum-oxide deflagration hazards / combustable dust hazards" with noticeable imagery and references to OSHA. The health/safety reports were sent on April 14, 2023 and April 23, 2023. Upon receipt confirmation of each report, the Employee mutually continued work contractually with the Employer.

### Defendant's Unconstitutional And Retaliatory Actions

9. On or about May 26, 2023, Tesla-Security informed the Employee of a sexual-assault report from an unfamiliar co-worker while relocating the Employee from the workplace. Tesla-HR (Human Resources) officially placed the Employee on Unpaid Administrative Leave on May 26, 2023 without official Notice to the Employee until July 21, 2023. The Employee was suspended from all official communications when placed on Unpaid Administrative Leave during multiple attempts to formally contact HR for an official confirmation of employment status. In the wake of a criminal investigative process, Tesla-HR was unwilling to officially declare the Employee's employment status or criminal charge by a response to phone/email contacts after intentionally placing the Employee on Unpaid Admin Leave. Refraining to inform the employment status or criminal charge of the Employee after approximately 60-days is the initial instance of claimed Adverse-Employment-Effects by Retaliation.

10. Judgement will find that the Unconstitutional activity is the instance of intentional "restraints on fundamental rights which are the essence of civil freedom, namely, the same right … to inherit, purchase, lease, sell and convey property." [Civil Rights Cases, 109 U.S. 3, 109 U.S. 22] 392 U.S. 409 (1968)

11. The Plaintiff establishes that the protected activity was a cause of the Retaliation (Adverse-Employment-Action) by the Defendant (Employer).

12. While on Unpaid Administrative Leave, the Employee was employed to effectively participate in a sexual assault investigation. The Employee effectively participated in the investigation under the restriction of a specific time-frame from Monday - Friday / 9:00AM - 5:00PM while on Unpaid Administrative Leave. While under the aforementioned restrictions, Tesla was able to then restrict and control the abilities of defenses from the Employee. Effectively participating in a criminal sexual-assault investigation while on intentional Unpaid Administrative Leave is the trending instance of claimed Adverse-Employment-Effects by Retaliation.

**Plaintiff's Ventures/Assets**

13. The Plaintiff maintains that the protected activity was a cause of the Retaliation (Adverse-Employment-Action) by the Defendant (Employer).

14. By taking actions to control the Employee physically, the Employer was set to effectively restrict Employee properties including critical business activity/developments. Working as hired from March 29, 2023, Plaintiff also maintained many business activities outside of Tesla Inc., under XED LLC. As a business owner from March 2022 actively setting business conditions, the Plaintiff has been effectively conducting business throughout employment at Tesla. During and after active business processes, which includes specific critical assets pertaining to both property and intellectual property (IP) such as U.S. Patent Applications [US18/321,430][US18/321,470] & U.S. Trademark Applications [97506489], the Plaintiff has been effectively restrained with Unconstitutional actions and persistent Retaliatory actions by Tesla which has had a direct affect on the Plaintiff's business/property. During Tesla's reiterative Retaliatory activity, where Plaintiff actively and effectively opposes/defends, business operations have been subject to critical losses until Present; the diminishment relative to critical business functions is definitive in the process of a start-up entity. Both critical & general developments/progressions since 2023 were restricted by Tesla's direct actions in restraining the Employee up-to Present.

15. Judgement will find that the Unconstitutional actions relative to the Plaintiff's profiteering-ownership is the instance of intentional "restraints on fundamental rights which are the essence of civil freedom, namely, the same right … to inherit, purchase, lease, sell and convey property."
[Civil Rights Cases, 109 U.S. 3, 109 U.S. 22] 392 U.S. 409 (1968)

16. On August 23, 2023, Tesla-HR notified the Employee that the investigative allegations were unfounded and "unsubstantiated". Then on or about September 14, 2023, after the internal sexual assault investigation, which was evidently false and fraudulent, Tesla sent the Employee a portion of payment and proceeded via email to explicitly demand that the Employee immediately return directly to the workplace to conduct direct work-duties. The Employee then participated in a formal opposition to occurring Retaliation, by presenting a formal lawful request to "confirm the working state/environment in regards to the Accuser in the investigation", in which Tesla responded "You will receive further updates once you report to your shop later tonight. Thank you.". Additionally, Tesla-HR reiterated the action by contacting the Employee again to declare the Employee has "failed to return to work or respond to our contact attempts — to discuss unapproved absences from work". The Employer refused opportunities to address/disclose any inquiries of workplace conditions before having the Employee effectively returned to the workplace and proceeded to extended multiple demands to return with official threats of Contract Termination. During and after the Tesla-HR sexual assault investigation, the Employer unlawfully held the Employee as guilty of sexual-assault in allowing adverse actions in the wake of the Employee's engagement in protected activities. The offenses by Tesla-HR in reoccurring motions to ensure the Employee was restrained from participation or opposition to activities protected by Equal Employment Opportunity Commission (EEOC) is Retaliation. In comparison, prior to hiring the Employee and engaging in mutual contractual business, Tesla effectively exercised its rights of Employee-Screening for effective employment. Tesla-HR refused to formally address whether the adverse-actions were appropriate relative to unlawful Discrimination based on the recently closed sexual-assault investigation and proceeded to continue Retaliatory activity. The actions from Tesla-HR in not addressing the working environment relative to the False Accuser based on the internal sexual assault investigation nor relative to the health/safety reports are direct causes of unlawful Discrimination/Retaliation. Such activities in constructive discharge or forcing an employee to resign by making the work environment so intolerable a reasonable person wouldn't be able to stay, is Discrimination/Retaliation, which the EEOC enforces against.

17. Opposition to actively identical Retaliatory conditions by returning to a Retaliatory working-environment is protected.

18. The Plaintiff maintains that the protected activity was a cause of Retaliation by the Defendant.

19. By December 2023, AppRoximately, the Employee filed a report to the California Civil Rights Department (CRD) as engaging in opposition to active Discriminatory/Retaliatory Employer practices. By March 2024, the CRD moved to make a Charge Filing with the EEOC where the Employer was a Respondent. By January 2025, based on the Official Evident Allegations from state/federal Commissions, the Employer formally claimed as a Respondent that the occurred actions/events were not Retaliatory and the Employee's Allegations were meritless. The offenses by the Employer in reoccurring motions to ensure the Employee remained in Adverse-Employment-Effects by Discrimination/Retaliation is presently factual.

20. Opposition to actively identical Retaliatory conditions by returning to a Retaliatory working-environment is protected.

21. The Plaintiff maintains that the protected activity was a cause of the Retaliation (Adverse-Employment-Action) by the Defendant (Employer).

22. On or about December 14, 2023, the Employee filed a report to the Occupational Safety And Health Administration (OSHA)(CAL-OSHA) regarding hazardous health/safety workplace conditions at the Tesla facility. The report included verbiage such as "respiratory aluminum dust hazards in working areas / direct inhalation of aluminum dust" and "proximity aluminum-oxide deflagration hazards / combustable dust hazards" with noticeable imagery, references to time, and declaration of occurring Employer Retaliation. OSHA then moved to address the active workplace conditions with Tesla-EHS. Tesla-EHS received formal written complaints sent from CAL-OSHA outlining the details of the Employee's health/safety reports sent to Tesla-EHS from April 2023. The complaints contained general and specific details of workplace conditions with direct references to OSHA law. Concurrent with Tesla's reoccurring Retaliatory actions, Tesla-EHS responded to the complaint with effectively explicit elimination and deleting tactics to the specific hazards and specific spaces. Again, the OSHA notices of specific detail included verbiage such as "respiratory aluminum dust hazards in working areas / direct inhalation of aluminum dust" and "proximity aluminum-oxide deflagration hazards / combustable dust hazards" with noticeable imagery, locations, references to time, and declaration of occurring Employer Retaliation. The specific details included in all reports sent to Tesla-EHS such as specific working-area and declared hazardous-matter was definitively disregarded. The health/safety reports to Tesla-EHS have been effectively in a state of deletion as of April 2025. The offenses by Tesla-EHS in reoccurring motions to ensure the Employee was restrained from participation or opposition to activities protected by OSHA is Retaliation. The offenses by the Employer in reoccurring motions to ensure the Employee remained in Adverse-Employment-Effects by Discrimination/Retaliation relative to responsibility of workplace health/safety are presently factual. Tesla-EHS disregarding the working-environment relative to critical specific health/safety reports are direct causes of unlawful Discrimination/Retaliation. Activities in constructive discharge or forcing an employee to resign by making the work environment so intolerable a reasonable person wouldn't be able to stay, is Discrimination/Retaliation, which OSHA enforces against. The 2023-2024 critical health/safety reports presented to Tesla-EHS which have been successfully disregarded and unaddressed in excess of two-years are direct causes of unlawful Discrimination/Retaliation as evident.

23. Opposition to identical Retaliatory conditions in a return to a Retaliatory working-environment is protected. The Plaintiff maintains that the protected activity was a cause of Retaliation by the Defendant.

## Background Of Ventures/Assets

24. As stated, by taking actions to control the Plaintiff physically, the Defendant (Tesla) effectively restricted Plaintiff's properties including critical business activity/developments; from [March 29, 2023], Plaintiff also maintained many business activities while working at Tesla Inc., under XED LLC. A tech start-up generating products functioning with everyday devices such as smartphones and applications reserved as TECH-CARD and SHOW-FRAME is the premise of the enterprise, which has the extent to generate billions in revenue annually.

25. Business functions are the activities a business performs to achieve its goals and objectives. These functions include general management, administration, human-resources, marketing, financing, public-relations, purchasing, and production. Business is an integral part of society, serving as the backbone of economic growth, job creation, innovation, and societal progress. It encompasses a wide-range of activities, from small-scale organizations to multinational corporations. Businesses have a crucial role in the functioning of economies and societies globally. Businesses that are at the forefront of innovation effectively move to develop new products and services which drives technological advancements that has varied value of benefit. Innovation enables efficiency, sustainability, and improved quality of living, making businesses essential for progress. Successful businesses invest in their sole functions and the community where any gains contribute to infrastructure development and supporting local initiatives. Businesses maintain wealth not only for their owners and shareholders, but also for employees and the broader community. The profits obtained can be reinvested into the business, leading to further growth and stability. This wealth creation is vital for improving living standards and ensuring financial security for individuals and groups. Business situations are constantly changing, and successful businesses are those that can adapt to new trends and reasonable or possible challenges. Effective leadership is highly critical to business success. Leaders have a critical function and establish processes that contribute to achieving business goals. Strong leadership enables positive business conditions and drives lasting performance. The Plaintiff holds a position as a leader of a start-up business, and the state of the business depends on effective actions/activity.

26.   TECH-CARD and SHOW-FRAME sets breakthrough innovations allowing societal opportunities of new experiences and new headways of global industries across a wide range of engineering, manufacturing, media and production fields. Verily, the primary business benefit is profound while established-conditions, proceeding-functions, and future-functions have lasting effects in creating opportunities for factions and profits. The following principal functions proceeding to set lasting effects of opportunities involve:

- **Engineering (R&D):**

    TECH-CARD and SHOW-FRAME are technical products engineered to be of quality and functionality. To continuously allow new progressions from processes in manufacturing or production, essential processes in the effective setting of compositions, such as structures or software, to the effective finishing of the products upholds a strong business model. The functionality of TECH-CARD by its components is to effectively function with devices individuals and groups use everyday/frequently such as smartphones and its applications. The smartphone is the base-structure for both products, while the current and future operability of smartphones set the effective use of both products.

- **Manufacturing:**

    The manufacturing of the products in relation to the magnitude of directly applicable devices such as iPhones, and SHOW-FRAME cases or TECH-CARD enclosures are the accessory of the devices, is a product of SHOW-FRAME, correlates to lasting manufacturing. The case or enclosure products use typical manufacturing materials and processes with the possibility of high-volume production.

- **Media Production:**

    In essence TECH-CARD and SHOW-FRAME are also basically of production quality. The formative factor of producing quality content to be displayed and reviewed is the object of each product. The crafted products are from the work of creative professionals who have the opportunity of a new platform to perform through various mediums and mechanisms. TECH-CARD includes the craft of paper-stock and digital craft processes of games/gaming from software compositions such as mobile-applications (Apps). SHOW-FRAME includes the many productive forms of handcrafts, drawings/paintings, and print-work such as photographs utilized in device cases. The endless possibilities from new content supports the principal functions in furthering primary benefits.

27. The main focus of any start-up entity is to effectively engage in lossless advancement and mission successful profit or nonprofit. Business processes such as matters with systems, sectors/industries, agencies (USPTO)(Reviews), and entities has occurred deterioration defending the unlawful activities by Tesla. Business processes since 2021 and official business from March 2022 in critical development of business conditions up to Present (2025), have been effectively sanctioned/restricted to include but not limited to Inactivity, Suspensions, Debts, Liens, IP-Abandonments, due to the actions of the Defendant (Tesla), during and after employment at Tesla.

28. Considering the Plaintiff's business functions, which also includes specific critical assets pertaining to both property and intellectual property such as U.S. Patents [US18/321,430][US18/321,470] & U.S. Trademarks [97506489], the Plaintiff is presently restrained by Unconstitutional actions and persistent Retaliatory actions by Tesla which has direct effects on the Plaintiff's business/property. During Tesla's reiterative Retaliatory activities, reproved by the Plaintiff's active and effective opposition/defense, business processes have been subject to critical diminishment up-to Present; the diminishment relative to critical business functions is definitive in the processes of a start-up entity. Both critical & general developments/progressions since 2023 were restricted by Tesla's direct actions in restraining the Employee up-to Present.

29. Judgement will find that the Unconstitutional actions stated relative to the Plaintiff's profiteering-ownership is the instance of intentional "restraints on fundamental rights which are the essence of civil freedom, namely, the same right … to inherit, purchase, lease, sell and convey property." [Civil Rights Cases, 109 U.S. 3, 109 U.S. 22] 392 U.S. 409 (1968)

30. By continually taking actions to maximally control the Employee physically/psychologically, the Employer was intending to effectively retaliate against the Employee resulting in affirmed Indirect-Damages. After the critical health/safety reports were sent and in receipt by Tesla, and during effective participation in a criminal investigation with prescribed constraints of hours and meetings, the Employee was restrained to an Unpaid Administrative Leave, without an official notification of working-status. Plaintiff (Employee) was withheld wages for approximately 4-months and withheld official notification of working-status for approximately 3-months while actively participating in a official investigation to defend against false-accusations. Concurrently, Plaintiff was also unlawfully restrained from engaging in critical protections of self and others in the workplace. Tesla's intent to do harm by intentionally allowing critically harmful conditions in the workplace and demanding the Employee to return to receive critical harms without any regard to health/safety reports sent from actively moving to implement protections has resulted in Indirect-Damages. Tesla's deliberate actions in deliberately preventing lawful conditions, relative to protected defensive reactions by the Employee, has the result of Direct-Damages to the Employee. From the sexual-assault investigation, where the Employee was falsely-accused of a crime, Tesla administratively used directed tactics of restriction, falsification, and incrimination to effectively and ultimately Retaliate against the Employee, beside reported administrations of preventative measures. In demanding the Employee to divest from effecting controls and protections for an effective return to the workplace where incrimination/falsification are effectively managed, shows that psychological strategy was arranged as to psychologically manipulate the Employee. The Employee was forced to accept Tesla utilizing confusion and manipulation to ensue immediate Retaliation and to further Retaliation. Forcing the Employee to deliberately accept/adhere to confusion and manipulation from a leading industry entity has led to career attenuation as restrained to conditions of a dysfunctional working environment. Tesla's actions opposing all lawful conditions and motions against the Employee, regarding aforementioned issues and ongoing issues, is the consequence of declared Damages. By restrainting the Employee to accept such conditions is definitive as Personal Damage. All Retaliatory actions where the Plaintiff actively moved to effectively defend has resulted in Personal Damages. Legal/Defensive actions were opposed by Tesla's direct unlawful conduct in restraining the Employee up-to present.

[FACT]
United States citizens have rights.
[FACT]
Rights of citizens constitutes Citizenship.
[FACT]
The United States Constitution is enforced law.
[FACT]
The Employee sent explicit critical reports to Tesla-EHS regarding workplace health/safety.
[FACT]
Before/After the Tesla-HR sexual assault investigation, the Employer unlawfully held the Employee as guilty of sexual-assault in allowing adverse actions during the Employee's engagement in protected activities.
[FACT]
The Employer (Tesla-HR) demanded the Employee to immediately conduct work-duties without regard to controlling present falsifications in the workplace (Adverse-Employee-Effects).
[FACT]
If a manager recommends an adverse action in the wake of an employee's filing of an EEOC charge or any other protected activity, the employer may reduce the chance of potential retaliation by independently evaluating whether the adverse action is appropriate.
[FACT]
The Employer effectively and decisively deleted official records/reports from the Employee.
[FACT]
By participation, an individual is protected from Retaliation for opposing unlawful practice under EEO law.
[FACT]
Protected opposition activity broadly includes the many ways in which an individual may communicate explicitly or implicitly in opposition to perceived employment discrimination.
[FACT]
Retaliation occurs when an employer takes a materially adverse action because an individual has engaged, or may engage in activity in furtherance of EEO laws the Commission enforces.
[FACT]
Retaliation provisions do not immunize the Employee from appropriate discipline or discharge.
[FACT]
The EEO participation clause by its terms contains no limiting language, and protects from retaliation Employees' participation in a complaint, investigation, or adjucation process.
[FACT]
Protected activity includes participating in an EEO process or opposing discrimination.
[FACT]
The Employee placed a formal report to OSHA outlining Health/Safety Violations and Employee Retaliation.
[FACT]
Critical Health/Safety Reports from the Employee and OSHA are unconsidered by the Employer.
[FACT]
The complainant claims prohibitions against retaliation after complaints to the Employer about alleged Equal Employment Opportunity (EEO) violations.
[FACT]
Charges filed with the Equal Employment Opportunity Commission (EEOC).
[FACT]
RECORDS AVAILABLE FOR REVIEW

# CLAIMS

## COUNT 1
## VIOLATION OF THE THIRTEENTH AMENDMENT

31. Plaintiff redirects to the facts of the preceding paragraphs.

32. Directions show how violations are connected to stated activities.

33. The Thirteenth Amendment authorizes "neither slavery nor involuntary servitude … shall exist within the United States, or any place subject to their jurisdiction" [U.S. Const. Amend. XIII]

34. As directed, the Employer's withholding of earnings and general-information during an extensive work-related investigation of criminality, pertinent to the Employee's constitutional right to voluntary agreements of working, is a violation of the Thirteenth Amendment.

35. Under the Thirteenth Amendment, a court shall hold unlawful "involuntary servitude" found to be contrary to constitutional right, power, privilege, or immunity. [U.S. Const. Amend XIII]

36. If Defendants' actions are not held unlawful, set aside, and enjoined as Unconstitutional, violations will continue.

# CLAIMS

## COUNT 2
### VIOLATION OF 42 U.S.C. § 2000e-3 : RETALIATION

37. Plaintiff redirects to the facts of the preceding paragraphs.

38. Directions show how violations are connected to Adverse-Employment-Actions from the stated initial sexual-assault investigative processes.

39. Title VII / Civil-Rights Act Of 1964 enforces that "it shall be unlawful employment practice for an Employer to discriminate against any Employees because the Employee has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing." [42 U.S.C § 2000e-3(a)]

40. Defendants' unlawful restrictions of Plaintiff (Employee) during a criminal investigation was to set withholdings from EEO protected activities opposing occurring Discriminatory/Retaliatory conditions violate Title VII Of The Civil-Rights Act Of 1964.

41. If Defendants' actions are not held as unlawful and set aside, Retaliation will last.

## COUNT 3
### VIOLATION OF 42 U.S.C. § 2000e-3 : RETALIATION

42. Plaintiff redirects to the facts of the preceding paragraphs.

43. Directions show how violations are connected to Adverse-Employment-Actions from the stated sexual-assault investigative processes.

44. Title VII / Civil-Rights Act Of 1964 enforces that "it shall be unlawful employment practice for an Employer to discriminate against any Employees because the Employee has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing." [42 U.S.C § 2000e-3(a)]

45. Defendants' demands that Plaintiff (Employee) separate from protected activities opposing occurring Discrimination/Retaliatory conditions by returning to a hostile workplace definitively violate Title VII Of The Civil-Rights Act Of 1964.

46. If Defendants' actions are not held unlawful and set aside, Retaliation will last.

# CLAIMS

## COUNT 4
### VIOLATION OF 42 U.S.C. § 2000e-3 : RETALIATION

47. Plaintiff redirects to the facts of the preceding paragraphs.

48. Directions show how violations are connected to Adverse-Employment-Actions from the stated initial Tesla-EHS health/safety reports.

49. Title VII / Civil-Rights Act Of 1964 enforces that "it shall be unlawful employment practice for an Employer to discriminate against any Employees because the Employee has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing." [42 U.S.C § 2000e-3(a)]

50. Defendants' demands that Plaintiff (Employee) separate from protected activities opposing occurring Discrimination/Retaliatory conditions in a return to a hostile workplace definitively violate Title VII Of The Civil-Rights-Act Of 1964.

51. If Defendants' actions are not held as unlawful and set aside, Retaliation will last.

## COUNT 5
### VIOLATION OF 42 U.S.C. § 2000e-3 : RETALIATION

52. Plaintiff redirects to the facts of the preceding paragraphs.

53. Directions show how violations are connected to Adverse-Employment-Actions from the stated OSHA health/safety investigative processes.

54. Title VII / Civil-Rights Act Of 1964 enforces that "it shall be unlawful employment practice for an Employer to discriminate against any Employees because the Employee has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing." [42 U.S.C § 2000e-3(a)]

55. Defendants' demands that Plaintiff (Employee) separate from protected activities opposing occurring Discrimination/Retaliatory conditions by returning to a hostile workplace definitively violate Title VII Of The Civil-Rights Act Of 1964.

56. If Defendants' actions are not held unlawful and set aside, Retaliation will last.

## DEMANDS FOR RELIEF

Plaintiff demands an order

   A.   In accordance with law, individuals who violate 42 U.S.C. § (1981) for Discriminatory/Retaliatory conduct can be held liable for compensatory or past pecuniary damages if they participated in the deprivation of Plaintiff's constitutional rights; or for conduct that showed indifference to any rights

   B.   42 U.S.C. § (1983)(1976) provides:

      Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the depravation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, other proper proceeding for redress.

   C.   Expediting the resolution of this action to prevent further unlawful activity by the Defendant.

   D.   Entering effective and reasonable judgements in favor of Plaintiff.

   E.   Declaring unlawful Defendants' Discrimination/Retaliation and attendant unconstitutional conditions from 2023 to Present.

   F.   Press Statements by the Defendant declaring the public of acting Discrimination/Retaliation and Unconstitutional conditions.

   G.   Awarding Plaintiff or the Court lawfully reasonable costs/fees of expertise in accordance with law including but not limited to 42 U.S.C. § (1988)

   H.   Issuing any and all other such relief as the Court deems just and proper relevant to 28 U.S.C. § 2202

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial for issues triable by Rule 38 of the Federal Rules Of Civil Procedure.

Respect,

Date: 06/10/2025     Sign Name: _____

Print Name: Teddy Richards II